I have the privilege today of representing Suzanne Jorgenson, the appellate in this case. I have 10 minutes to try to convince you to reverse what the bankruptcy appellate panel did, and I see two hurdles to overcome. Well, the first one is mootness. Exactly. That's what I wanted to talk about. I want to know which way you went so we can talk about that, Your Honor. Your Honor, I'm going to confine my comments to what is involved in the record. It's one of these things where you have a casino with seven related entities which file for bankruptcy, and then there's a complex plan of reorganization which involves a settlement agreement. And this plan is confirmed on 12-21 of 04, and that was when the appeal was pending before the bankruptcy appellate panel. The final decree in this case was entered on March 31, 2005. And what's important, and what I'd like to talk about in why it isn't moot, is what the plan provides. It basically says all allowed claims shall be paid in full. No disputed claim shall be paid until it's allowed. Then I would like to direct your attention, Your Honors, to Exhibit A to the appellee's brief in this case, which attaches a copy of the confirmation order, and attached as an Exhibit A to that confirmation order is a ledger. It tells you what all of the unsecured claimants are owed. It's about $163,000. It goes on, and at the very end of it, it basically says if all claims are paid, we've got about $400,000 in cash here. There's a dispute with the IRS of about $59,000. If everything is paid, there's $59,000, $59,390, and $57,000. The other interesting thing about Exhibit A is that if you look at what the claims are going to be paid, the unsecured claims of all seven entities is $163,000 and change. But then, as a line item, it has interest on the unsecured claims of $65,60. We know in bankruptcy where the case is solvent, the Beglin decision requires that interest be paid to these claimants. It's only when the case is insolvent and there's not enough money to go around and pro rata payment is required that an unsecured creditor does not get interest. Well, counsel, let me just see if I understand the facts correctly. The plan has been approved. There was no appeal. All of the assets, as I understand it, have been distributed. State line is no longer in existence. That's true. But there's a reserve. There is a reserve. There is a reserve. And you can find – and that's part of the record, Your Honor. And this is very important because I spent a lot of time poring over this. When you say there's a reserve, is there a fund of money sitting in a bank someplace? No. It would basically be money that would have been distributed to the equity security holders. See, here's how it works. In a bankruptcy, we pay all the allowed claims. There's administrative claims, attorney's fees, IRS. There's unsecured claims. There's secured claims. You know, the secured claims I don't think was revoked. But all of those have been paid out. Everything's been paid. But after everything was paid, guess what? There's $59,390 less if all disputed claims are allowed for their full amount. Now, if you look at the ledger, it says, what about the IRS? It says the IRS is disputed for $56,841.39. Judge, what this means is that if the IRS wins its dispute, $59,390 is left. If the IRS, the dispute is disallowed, then there's another $56,000 that goes in the pot for a total of $116,000. But there were other debtors. They were all paid in full. They were all paid in full? Yes, ma'am. Do we know the source of the money? There are a lot of entities here. Any indication that this money came from the state line, does he know? Yes. As opposed to some other entity? Your Honor, all of the money was in a combined pot is what it appears to be. And I'm looking at Attachment A to the order which is attached to the appellee's brief. And where I'm getting this is that the second page says total, all cash, 401-738-56. Net cash available after payment of all possible claims payable upon confirmation. Net cash left over, $59,390. Then if you go back one page to where it talks about IRS, you'll see a footnote. And there's a footnote 1 there. And it says total disputed IRS, 56,841.39. What this tells us, Judge, and this is in the record, it tells us that every – there are some disputed claims because the plan says we're not going to pay the disputed claims until they're allowed. But what they did do is they valued the disputed claims. They basically said, look, we don't dispute any of this, but we do dispute the IRS for about 50 or 60,000. If the IRS is right and we lose the dispute, then there's 59,000 left for a surplus. In other words, we can pay everybody, we can pay the IRS dispute, and there's  If we lose the dispute, there's 59,000 left for a surplus. Roberts, what's your position with respect to this? Is this cash in an account someplace? Your Honor, it says net cash available after payment and full of all possible claims. I would assume it is cash. And your assumption is that that's sitting in some bank account someplace. It's sitting – it tells you what the cash is right above that. It's cash excluding settlement funds, and it shows you the accounts that they're in. There's a Downey Brand and an LNBRB account, and they total the 401,000. Then we take all undisputed claims, okay? Then we take the IRS dispute and assume that they win. If the IRS wins, there's still $59,390 left over. If the IRS loses, in other words, the debtor is right, IRS, you're not entitled to that, guess what? The IRS disputed amount of 56,000 is added for a total net cash of 116,000. We understand that, but you're saying it doesn't make any difference where the money came from. There are seven entities originally or something of that number. There were, yes. And the claim is against the State Line Casino, which was a partnership. And against the State Line Casino, a partnership. All of them, yes. And – but what's left at the end are two entities, one of which is not the State Line Casino. Well, Your Honor, there's seven. There's seven entities as a whole. And what this ledger sheet does is it talks about all claims against all seven entities. So you don't have to trace the claim. You don't. You don't. In other words, all claims of all seven entities are paid in full. And you can tell this from two ways, Your Honor. The first is the line item of the 59,000 left over. The second is the fact that the unsecured claims are being paid interest. You don't pay unsecured claims interest under the Baiglin decision. And that's not in my brief, Your Honor. It's just a rule, and that's the case if you want to look it up to verify it. But you don't get interest on unsecured claims if the estate's solvent. So what are you asking? Is this for this Court to reverse, and then what? Okay. Your Honor, I want to answer that very quickly and then save the rest of my time. What I'm saying, Your Honor, is that in the record, I mean, I don't know if Appellee Counsel is going to come up here and say, hey, it was all spent. But if you read Dynamic Brokers, that's the case that says, hey, if we can fashion some sort of equitable relief, then it's not moot. There's money here. It would have gone to the debtor's equity security holders. That can be brought back. Therefore, if this Court were to remand, there would be an evidentiary hearing where Ms. Jorgensen's claim could be valued. It could be allowed or disallowed on its merits this time. And then if there is any money left over, she could have a subordinated claim for up to that amount. We're not asking to take any money from any of the creditors that got paid. They got paid, that's fine. They get it. Because this is a court of equity and claims allowance is an equitable issue, then her claim could be equitably subordinated, but she gets something. You can pluck it back from the debtor's equity security holders. May I reserve the floor? Roberts, You may certainly do. Thank you. We'll hear from the other side. Good afternoon. Nelwynn Borries, appearing for Stateline Hotel, Inc., and Jim's Enterprises, the only two remaining debtors. Unfortunately, Your Honor, that is a complete misstatement of the facts of this case and has no bearing on the record or what has actually happened. There were seven debtors. There were two or three different plans filed, a plan for corporate debtors and a plan for the partnership debtors. The partnership debtors, pursuant to a settlement, their creditors were paid in full. The two corporate debtors that are remaining have $7 million of unpaid claims against them. Those are the only entities remaining. Stateline Casino does not exist. There are no funds anywhere belonging to Stateline Casino. And that's clear from the fact that a plan was confirmed that was a liquidating plan and a final decree was entered. And in the record, in the plan, it shows that creditor reserve did not belong to the partnership debtors. Well, first of all, what is the status of this reserve? Describe it in terms of what's there today. There is a reserve of approximately $800,000, which belongs to Stateline Hotel, Inc. and Jim's Enterprises, Inc. Stateline Casino has no interest in that reserve. The creditors of Stateline Casino have no interest in that reserve. The settlement agreement that was provided to the court that was approved by the Bankruptcy Court, and it's in the appellant's excerpts of record or the appellee's excerpts of record before the back on page 99, says, The partnership debtors have and continue to have no interest in the creditor reserve to the extent the funds in the creditor reserve exceed the aggregate amount necessary to pay all allowed claims to the partnership debtors. And her claim was against Stateline Casino. Stateline Casino, which exists only. It doesn't exist. You can't order them to do anything because there are no people. Are there any successor liability orders? No. There was no successor liability. It was wound up under State law, and all claims were paid in full. There was no appeal of that order. What's the status of the 59,000 that we heard about this morning? I don't think it ended up being 59,000. There were some, but that was contributed back to Stateline Hotel, Inc. So the so-called 59,000 no longer exists? Is that what you're saying? It does not exist, and it was not distributed to the partners. What happened in the settlement, which is very clear from the record if you go back and look at the settlement itself, Stateline Casino was administratively insolvent. It had virtually no funds. This was a case where Stateline Hotel was the operating entity and owned all the assets. The partners had created this other partnership. We're not really sure why it got created. They ran a couple of little things through it, but it had no assets. In order to settle these cases and resolve a lot of intercompany disputes, because the debt was so low against Stateline Casino, there was only $90,000 worth of claims After Ms. Jorgensen's claim was disallowed, Stateline Hotel and the partners agreed to contribute enough money to pay those claims in full. So that money was contributed. Any excess that was contributed that was not needed was refunded back to Stateline Hotel, Inc. So Stateline Hotel, Inc. is the only entity that has funds. Ms. Jorgensen has never filed a claim against Stateline Hotel, Inc., and I don't believe this Court has the power to give her a claim against the assets of Stateline Hotel, Inc. The only court they could give her that is Judge Zive back at the bankruptcy court level. And it's never been asked for, really, until this reply brief was filed, saying, I've gone through this, I found a balance sheet, it's $59,000, we get that. But it doesn't exist, and it doesn't belong to this debtor. This debtor was dissolved more than two years ago. There's nothing there. It sounds like it's moot. I believe it is, Your Honor. That seemed very clear to us, which is why, unfortunately, we did not file a more substantive brief with the Court. We don't have a client that's paying money for this anymore. However, certainly once the Court scheduled argument, we believed it was important to be here out of deference to the Court and explain any issues, because there has been this continued confusion. Debtors with related names cause that sometimes. But I think the reality is very simple. You have a final decree, you have a partnership that doesn't exist, you have a plan that says explicitly the partnership debtors have no interest in the creditor reserve. And none of those orders were appealed. And I think that's the distinction I would make in the Dynamic Brokers case that was cited. In the Dynamic Brokers case, the Court looked at concurrent appeals of a plan and an objection to claim. And the Court in Dynamic Brokers said, well, if we undo the plan, then maybe we could undo some distributions. Well, you can't undo the plan here because no one has appealed that. And at this point, I don't see how you undo a plan where there's no continuing entity. But if you don't undo the plan, you can't undo the 90,000 that was paid out, and there's no money to grab back for an alleged creditor of a state-owned casino. Anything further? No, Your Honor. Mr. Laners, you have some reserve time. Your Honor, very briefly, I wish to read from the order which is attached, which attaches the alleged creditors. Well, why don't you respond directly to the assertion that you just heard, that the 59,000 no longer exists and in any event doesn't belong to this debtor? Well, Statewide Hotel, Inc. has funds. She just said that. That's one of the seven entities. I would – there's a case called In Re Home. And I hate to cite cases out of context, but what would happen is this. Is it in the brief? It is not in the brief because this just came up. In other words, she's basically saying that you only file – As you know, we have a court rule that when you want to do that, you file three copies with the court and your opposing counsel. Perhaps I could state it a different way, Your Honor. We filed a claim against Stateline Casino, Inc. That's where she was hurt. It turns out that Stateline Hotel, Inc. is one of the seven related debtor entities that has funds. Imagine for the sake of argument that that claim had not been disallowed based on the various reasons that it was. Imagine that it was allowed, and then she discovered, oh, Stateline Casino is the one that has the funds. I'm going to amend that claim. What the Ninth Circuit law – You mean hotel that has the claim. Yes. I mean the money. Exactly. Because she'd be allowed to examine the relationship between the seven entities. There's veil piercing. There's partnership liability. There's joint venture liability. There's a lot of different theories of liability. And the bankruptcy rules as interpreted by the Ninth Circuit are extremely liberal in allowing debtors to file amended proofs of claim. As a matter of fact, you can send a letter to the trustee saying, I expect you to pay me, and that can be deemed an informal proof of claim subject to amendment after the bar date. Simply put, there's money someplace, it's under one of the revolving cups here, and it's not moved in the event that one of those debtor entities has it, and Ms. to get it. So it doesn't matter that she filed the proof of claim against the wrong entity. It's not moved. Thank you, counsel. The case just argued will be submitted for decision, and we will hear argument in Bolt v. Merrimack, Pharmaceuticals. Counsel, you may proceed. Good morning, Your Honor.
judges: Hall, O'scannlain, Gonzalez